STATE OF NORTH CAROLINA v. HENRY DALLAS TUTTLE

No. 7622SC1058

(Filed 15 June 1977)

1. Criminal Law § 66.10— jailhouse confrontation — in-court identification properly allowed

Though a one-on-one jailhouse confrontation between defendant and a robbery victim was unquestionably suggestive, it did not lead unfairly to mistaken identification and the trial court properly allowed the victim to make an in-court identification of defendant where the evidence tended to show that the victim viewed defendant in daylight on two occasions on the day of the robbery and conversed with him

both times; both encounters lasted three or four minutes; the witness observed the robber's features while they were conversing on both occasions; the victim's description given to a deputy sheriff was sufficiently thorough, and defendant made no attempt by cross-examination or otherwise to show that the description given by the victim prior to confrontation in the jailhouse was not an accurate description of the defendant; at the confrontation in the jailhouse the witness immediately recognized the defendant as the man who had robbed him and so informed police officers; and five or six days elapsed between the time of the crime and the confrontation.

2. **Criminal Law § 102.6— jury argument of district attorney — no prejudice to defendant**

Defendant was not prejudiced by the trial court's failure to sustain his objection to the district attorney's remark that "if I didn't believe this was a case worth trying, I have got the power to throw it out," since the court on numerous occasions properly admonished both the district attorney and the defendant's attorney and gave curative instructions to the jury.

3. **Criminal Law § 86.2—defendant's prior convictions — admissibility of testimony for impeachment**

The trial court did not err in failing to sustain objections to two questions asked of defendant on cross-examination about prior convictions, since a criminal defendant who takes the stand may be asked about prior convictions for the purpose of impeachment; moreover, defendant was not prejudiced where he testified that he had been convicted of misdemeanor larceny when he in fact had pled guilty, since a guilty plea is the equivalent of a conviction.

APPEAL by defendant from *Kivett, Judge.* Judgment entered 5 August 1976 in Superior Court, DAVIDSON County. Heard in the Court of Appeals 12 May 1977.

Defendant pled not guilty to common law robbery.

Prior to trial defendant moved to suppress in-court identification testimony by Howard Leonard, the victim of the alleged robbery, and by witnesses John and Emmett Edwards, and also testimony to out-of-court identification of defendant's photograph. Based upon the testimony of these men and of Deputy Lester Bass, the court found the following facts: Around 1:45 p.m. on 2 April 1976, a young black male visited Mr. Leonard's gas station and grocery store on two occasions. On the first occasion, John and Emmett Edwards were also at the station and saw this person, who purchased two quarts of oil from Mr. Leonard. Mr. Leonard conversed with this person, who stayed at least three or four minutes. This person returned a short time later, told Mr. Leonard he wanted to purchase some

gasoline, followed him inside the store, placed .one arm around his neck, threatened him with a tire tool, and robbed him of about $150.00. All of these events took place in daylight.

Two days later Deputy Bass spoke with Mr. Leonard about the robbery, and Leonard identified the robber as a young black male, height, 5'8" or 5'9", weight in excess of two hundred pounds, chunky build, bushy hair, and driving a bronze or beige colored veicle that appeared to be a Cadillac. Five or six days after the robbery Deputy Bass telephoned Mrs. Leonard and asked her to tell her husband to come to the jail to determine whether he could identify a person in custody whom the police believed to be the robber. This person was the defendant. About 9:00 p.m. Mr. Leonard arrived at the jail, saw a young black male sitting in a waiting area, and immediately recognized him as the robber. (Deputy Bass testified that defendant was the only black person then sitting in the lobby.) He also identified a car in the parking lot as the one used by the robber.

At some subsequent time Mr. Leonard and John and Emmett Edwards were shown nine photographs. Mr. Leonard stated that number seven was a picture of the man who robbed him, and John and Emmett Edwards stated that number seven was a picture of the man they had seen at Mr. Leonard's store on the day of the robbery. Defendant offered no evidence at *voir dire*. Defendant's motions to suppress were denied.

At trial the State's evidence tended to show the same as set forth above.

The defendant's evidence tended to show that on 2 April 1976 he was unemployed, and from about 7:00 a.m. to 3:00 p.m. he and his son were at relatives' homes.

The jury found defendant guilty as charged, and defendant appeals from judgment imposing imprisonment.

*Attorney General Edmisten by Associate Attorney Claudette C. Hardaway for the State.*

*J. Calvin Cunningham for defendant appellant.*

CLARK, Judge.

[1] Defendant first assigns error to the denial of his motion to suppress the in-court identifications and the photographic identification.

The practice by law enforcement officers of showing suspects singly to persons for the purpose of identification, oft-referred to as "the one-on-one confrontation," is usually in violation of constitutional due process and has been widely criticized. *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed. 2d 1199 (1967); *State v. Wright,* 274 N.C. 84, 161 S.E. 2d 581 (1968). However, the one-on-one confrontation does not render inadmissible the in-court identification if the identification had an origin independent of the illegal confrontation. In *State v. McNeil,* 277 N.C. 162, 176 S.E. 2d 732 (1970), the court ruled admissible the identification testimony of a young rape victim where law officers took the defendant to a public school for her to see him. The court pointed out that at the time of this confrontation there was abundant evidence against the defendant, and that the school confrontation was for the purpose of confirming the identification made by two boys. See also *State v. Smith,* 278 N.C. 476, 180 S.E. 2d 7 (1971); *State v. Gatling,* 275 N.C. 625, 170 S.E. 2d 593 (1969); *State v. Huffman,* 7 N.C. App. 92, 171 S.E. 2d 339 (1969).

When the admissibility of in-court identification is challenged on the ground that it is tainted by an out-of-court identification made under constitutionally impermissible conditions, the trial judge must conduct a *voir dire* to determine the admissibility of the evidence and make appropriate findings of fact. *State v. Bass,* 280 N.C. 435, 186 S.E. 2d 384 (1972). If the facts found on *voir dire* are supported by competent evidence and the conclusions of law are supported by the findings of fact, they are conclusive on appellate courts. *State v. Woods,* 286 N.C. 612, 213 S.E. 2d 214 (1975). The test under the due process clause as to the constitutionality of pretrial identification procedures is whether the totality of circumstances reveals pretrial procedures so unnecessarily suggestive and conducive to irreparable mistaken identification as to offend fundamental standards of decency, fairness, and justice. *State v. Henderson,* 285 N.C. 1, 203 S.E. 2d 10 (1974). In order to exclude the in-court identification testimony, it must appear not merely that the pretrial procedures were illegally suggestive and conducive to mistaken identification, but also that such procedures were so suggestive and conducive to mistaken identification that any in-court identification is irreparably tainted. *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed. 2d 1149 (1967); *cf. State v. Henderson, supra.* In *Henderson,* the court evaluated

the reliability of the in-court identification upon the basis of factors enumerated in *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed. 2d 401 (1972). Those factors are: (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation.

Applying the facts found in the case before us to the *Neil* and *Henderson* standards we note the following: (1) The witness viewed the defendant in daylight on two occasions on the day of the robbery and conversed with him both times. The first encounter lasted three or four minutes; the second encounter occurred a short time later and also lasted three or four minutes; (2) The witness observed the criminal's features while they were conversing on both occasions and on the second occasion "had nothing to do but look at his face" when grabbed by the throat; (3) the description given to Deputy Bass was sufficiently thorough, and defendant made no attempt by cross-examination or otherwise to show that the description given by Mr. Leonard prior to the confrontation in the jailhouse was not an accurate description of the defendant; (4) At the confrontation in the jailhouse the witness immediately recognized the defendant as the man who had robbed him and so informed the police officers; (5) Five or six days elapsed between the time of the crime and the confrontation.

The one-on-one jailhouse confrontation was unquestionably suggestive, but considering the totality of the circumstances in this case we do not find it led unfairly to mistaken identification. We conclude that there was competent evidence to support the findings of fact, and that the findings of fact support the judge's conclusion that the in-court identification was reliable and of independent origin.

Within this same argument, defendant, in disregard of North Carolina Rules of Appellate Procedure 10(c) and 28(b)(3), groups two additional assignments involving separate principles of law. Defendant contends that the in-court identification of his vehicle as that of the robber by Mr. Leonard was tainted by the pretrial procedures at the jailhouse. No authority is cited to support the application of the rules pertaining to

---

State v. Tuttle

---

pretrial identification of persons to pretrial identification of property, nor is any argument or reason advanced for such application. We therefore consider this assignment abandoned under Rule 28(b)(3).

The final assignment grouped under the first argument is that the judge erred in denying defendant's motion to suppress the admission of a group of photographs shown prior to trial to Messrs. Leonard and John and Emmett Edwards. The record reveals that these photographs were never offered in evidence or shown to the jury. A new trial will be granted only for error which is prejudicial or harmful. *Whitley v. Richardson*, 267 N.C. 753, 148 S.E. 2d 849 (1966). Even if we were to concede error in the judge's denial of defendant's motion to suppress, which we do not, we fail to see how such error could have prejudiced or harmed defendant. We see no merit to defendant's assignment of error concerning the denial of the motion to suppress.

[2]    Defendant's next assignment of error is that several remarks and actions of the district attorney violated "the rules of fair debate" and prejudiced defendant's case. We note at the outset that error should be assigned not to the remarks of the district attorney, but rather to the actions thereon taken or not taken by the judge. It appears from the record that on several occasions the conduct of both the district attorney and defense counsel indicated a lack of maturity and judgment. But for the admonitions of the trial judge, a circus atmosphere might have prevailed. At one point the judge cautioned,

> "Gentlemen, I don't know. We may have to proceed with the trial of this case without either attorney being present. I want you to clearly understand it at this time. Do not exchange comments. Object, and the other party stop talking so that I may rule. . . . "

The only remark of the district attorney to which objection was not sustained or for which admonition and instruction was not given occurred during jury argument. The district attorney stated that "If I didn't believe this was a case worth trying, I have got the power to throw it out." Defendant relies upon *State v. Smith*, 279 N.C. 163, 181 S.E. 2d 458 (1971), wherein a similar remark was made, for the proposition that failure to sustain an objection to this remark constitutes reversible error. That case is distinguishable from this one because there the

remark that the solicitor knew "when to ask for the death penalty and when not to" was one small part of an argument which the court characterized as a "tirade" with "inflammatory and prejudicial effect." Although it would have been better had defendant's objection been sustained, in view of the numerous instances in which the judge properly admonished both attorneys and gave curative instructions to the jury, we conclude there was no prejudicial error in the failure to sustain defendant's objection. We find no merit to this assignment of error.

[3] Defendant's next assignment of error is to the failure of the court to sustain objections to two questions asked the defendant on cross-examination about prior convictions. Defendant cites as authority *State v. Williams*, 279 N.C. 663, 185 S.E. 2d 174 (1971), which is entirely inapposite since that case holds only that a defendant may not be cross-examined about *indictments* for the purpose of impeachment. It is well established and was reaffirmed in *Williams* that a criminal defendant who takes the stand is subject to cross-examination the same as any other witness and may be asked about prior convictions for the purpose of impeachment. *State v. McKinnon*, 223 N.C. 160, 25 S.E. 2d 606 (1943). In the present case, defendant was asked if he had been convicted of misdemeanor larceny and over objection he answered yes. On appeal counsel argues that this was error because defendant had not been convicted but had pled guilty. Counsel is apparently unaware of a long line of cases wherein it has been ruled that a guilty plea is the equivalent of a conviction. See 4 Strong, N. C. Index, Criminal Law § 23, p. 91, n. 79 (3d ed. 1976). Defendant's response to the second question was that he had not been convicted; the State was bound by this answer and made no attempt to prove otherwise. Therefore, we fail to see any prejudice to defendant from the failure to sustain that objection. We find no merit to this assignment of error.

Defendant's final argument incorporates four assignments of error to the charge. Again, since these assignments raise separate issues of law, they were not properly grouped in accordance with Rule 10(c). The general rule is that there is not error if the charge, when read as a whole, presents the law to the jury in such manner as to leave no reasonable cause to believe that the jury was misled or misinformed. We have carefully examined defendant's arguments, and we conclude that the charge did fully, adequately and without chance of mis-

information present the law to the jury. We find no merit to the assignments of error concerning the charge.

No error.

Judges MORRIS and PARKER concur.